UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE,

     Plaintiff,

                                     Case No. 1:18-cv-1430

v.

                                     HON. JANET T. NEFF

MICHIGAN STATE UNIVERSITY, et al.,

     Defendants.

_____/

## OPINION AND ORDER

Defendants Michigan State University (MSU), Michigan State University Board of Trustees, Lou Anna Simon, John Engler, Andre Durojaiye, Rick Schafer and Denise Maybank ("the MSU Defendants") move to dismiss the federal claims in Plaintiff's Amended Complaint and move to strike the putative class claims therein (ECF No. 51).  Defendant Elizabeth Abdnour filed her own motion to dismiss the two federal claims in which she is named (ECF No. 54). Having considered the parties' submissions, the Court concludes that oral argument is unnecessary to resolve the issues presented.  *See* W.D. Mich. LCivR 7.2(d).  For the following reasons, the Court grants in part and denies in part both motions.

## I.       BACKGROUND

This case arises from an alleged sexual assault by John Doe against Jane Roe on the night of August 31, 2017, in the dormitory room in which Roe resided while then a freshman undergraduate student at MSU.  Plaintiff is proceeding under a pseudonym per this Court's April 9, 2019 Order (ECF No. 23).  According to Plaintiff's allegations in his Amended Complaint, at the time of the alleged incident, he was a sophomore at MSU, living on the same dormitory floor as Roe, whom he had met only a few days earlier (Am. Compl. [ECF No. 34] ¶¶ 84-85).  The

incident occurred following their attendance at a fraternity's "paint party" event on the evening of August 31, 2017 (*id.* ¶ 82). Both he and Roe were consuming alcohol, and, according to Plaintiff, he was "highly intoxicated" (*id.* ¶¶ 88, 95-96).

Plaintiff alleges that while he and Roe were in her dorm room, she "independently climbed into her top bunk bed" and "independently took her underwear off" (Am. Compl. ¶¶ 136-137). According to Plaintiff, Roe told him that "she had never had sex before," and he "verbally asked Roe several times if she was 'ok' with the sexual encounter" (*id.* ¶¶ 138-139). Plaintiff alleges that each time he asked, "Roe verbally responded and gave her affirmative consent" (*id.* ¶ 139). Plaintiff alleges that he put on a condom, and they attempted to engage in sexual intercourse three times; however, "[b]ecause he was unable to obtain a full erection, he could not enter Roe's vagina" (*id.* ¶¶ 141-151).

The next day, September 1, 2017, Roe allegedly filed a report with the MSU police and went to Sparrow Medical Center to undergo a Sexual Assault Forensic Exam (SAFE); however, given the wait time at the medical center, she was unable to complete the exam until September 3, 2017 (Am. Compl. ¶¶ 169-171). Plaintiff alleges that Roe's friends thereafter "engaged in a campaign" against him, including writing obscenities on his dorm room door (*id.* ¶¶ 172-180). MSU police reported Roe's complaint to MSU's Office of Institutional Equity (OIE) on September 8, 2017 (*id.* ¶¶ 169, 185).

Defendant Abdnour, an attorney "with a background in advocating for survivors of sexual assault" and a Senior Institutional Equity Investigator at MSU's OIE, conducted the investigation of Roe's complaint (Am. Compl. ¶¶ 20, 186). Abdnour interviewed Plaintiff, Roe, and nine other witnesses (*id.* ¶¶ 187, 197 & 211). Plaintiff alleges that Abdnour "built a case against [him] instead of conducting a thorough, impartial investigation" (*id.* ¶ 186). Plaintiff alleges that Abdnour failed to timely attempt to secure vital surveillance footage from the night in question, which was "crucial

evidence of [his] incapacitation and Roe's alleged incapacitation" (*id.* ¶¶ 187, 204-209).  Plaintiff alleges that "[a]t no point was [he] offered a live hearing or even an opportunity for live cross-examination of Roe or her witnesses" (*id.* ¶ 196).  Plaintiff alleges that Abdnour "failed to indicate whether the actions that [he] complained of could be violations of other rules and regulations" and "dismissed [his] claims of retaliation outright" (*id.* ¶¶ 201 & 203).  And Plaintiff alleges that Abdnour "failed to investigate whether Roe had committed a sexual assault against [him], in that [he] lacked the capacity to give consent" (*id.* ¶ 229).

Abdnour issued a draft investigative report, to which Plaintiff submitted a response (Am. Compl. ¶ 238).  On January 3, 2018, Abdnour issued a final investigative report, finding a preponderance of the evidence demonstrated that Plaintiff had sexually assaulted Roe in violation of MSU's Relationship Violence and Sexual Misconduct (RVSM) policy (*id.* ¶¶ 220 & 223).  Plaintiff submitted a Sanction Mitigation Statement to the RVSM Panel (*id.* ¶ 233).  Plaintiff was dismissed from MSU (*id.* ¶ 230).  On February 1, 2018, Plaintiff filed an appeal with the Vice President for Student Affairs and Services, which was denied on February 26, 2018 (*id.* ¶¶ 239 & 245).

In December 2018, Plaintiff filed this case, alleging seven claims.[1]  Count I alleges violation of his due process rights under the Fourteenth Amendment against "the individual Defendants."  Count II alleges violations of Title IX of the Education Amendments of 1972 against "MSU."  Count III alleges violation of his equal protection rights under the Fourteenth Amendment against "all Defendants."  Counts IV through VII seek relief under Michigan state law.

---

[1] Plaintiff's counsel also filed two other cases against MSU. Although their underlying facts vary, all three plaintiffs filed nearly identical complaints alleging claims arising from the alleged gender-biased application of MSU's RVSM policy. The first case, *Mumphery v. MSU, et al.*, 1:18-cv-576, settled in June 2019. The second case, *John Doe v. MSU, et al.*, 1:18-cv-1413, is still pending and contains a similar set of motions to dismiss as the motions in the case at bar.

On July 5, 2019, Plaintiff filed an Amended Complaint to include class action allegations relative to the federal and state-law due process claims previously alleged (ECF No. 34).  Pursuant to Federal Rule of Civil Procedure 23(b)(2), Plaintiff seeks to certify the following class:

> All MSU students and/or former students, including prospective and future students, subjected to a disciplinary sanction, suspension, or expulsion pursuant to a finding of responsibility under the RVSM Policy (or its predecessor and/or successor policy/policies) without first being afforded a live hearing and opportunity for cross[-]examination of witnesses.

(Am. Compl. ¶ 275).  Defendants, who have not yet answered the Amended Complaint, filed these motions to dismiss.

## II.    ANALYSIS

### A.    Motion to Dismiss Federal Claims

#### 1.    <u>Motion Standard</u>

A complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007).  Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move for dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted[.]" FED. R. CIV. P. 12(b)(6).  A motion asserting this defense "must be made before pleading if a responsive pleading is allowed."  *Id.*

In resolving a motion under Rule 12(b)(6), a court uses the following three-step process:

> First, the court must accept all of the plaintiff's factual allegations as true. Second, the court must draw all reasonable inferences in the plaintiff's favor. *Id.* And third, the court must take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief.  If it is at all plausible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his complaint, the case proceeds.

*Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018) (internal citations omitted).  The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

2.      § 1983 Claims (Counts I & III)

Plaintiff's claims in Count I (Due Process) and Count III (Equal Protection) are brought under 42 U.S.C. § 1983.  Section 1983 does not confer substantive rights but merely provides a means to vindicate rights conferred by the Constitution or laws of the United States.  *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010).  Specifically, § 1983 provides a cause of action against a government official who performs discretionary duties in a manner that deprives an individual of a right secured by the Constitution or laws of the United States, if the right was clearly established at the time of the deprivation.  *Smith v. Erie Cty. Sheriff's Dep't*, 603 F. App'x 414, 418 (6th Cir. 2015) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To state a claim under 42 U.S.C. § 1983, "'a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'"  *Scott v. Kent Cty.*, 679 F. App'x 435, 438 (6th Cir. 2017) (citation omitted).  "Government officials are immune from civil liability under 42 U.S.C. § 1983 when performing discretionary duties, provided 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Simmonds v. Genesee Cty.*, 682 F.3d 438, 443 (6th Cir. 2012) (quoting *Harlow*, 457 U.S. at 818).

a.  MSU

The MSU Defendants argue that Plaintiff improperly names MSU as a defendant to his § 1983 claims (ECF No. 51 at PageID.625).

Plaintiff does not expressly address this argument.

The MSU Defendants' argument has merit.

MSU is an arm of the State.  *See* MICH. CONST. Art. VIII, § 5.  It is a public university

organized and existing under the laws of the State of Michigan.  *See* MICH. COMP. LAWS § 390.101.

As an arm of the State, MSU is not a "person" under § 1983.  *See Will v. Mich. Dep't of State*

*Police*, 491 U.S. 58, 71 (1989); *Underfer v. Univ. of Toledo*, 36 F. App'x 831, 834 (6th Cir. 2002)

("public-funded universities are not considered 'persons' under § 1983").  Accordingly, Plaintiff's

§ 1983 claims against MSU are properly dismissed.

    **b.  The Individual Defendants**

    (1) Official Capacities

    The MSU Defendants argue that Plaintiff's claims against Defendants Simon, Engler,

Durojaiye, Schafer and Maybank in their official capacities should be dismissed (ECF No. 51 at

PageID.625; ECF No. 53 at PageID.682).  Defendant Abdnour likewise argues that suits against

her as an employee of MSU, acting in her official capacity, are barred by the Eleventh Amendment

(ECF No. 54 at PageID.721).

    Plaintiff argues that the Eleventh Amendment does not protect the individual Defendants

but permits suits against state officers for prospective injunctive relief (ECF No. 52 at PageID.658-

659; ECF No. 55 at PageID.740).

    Defendants' argument has merit, in part.

    "[A] suit against a state official in his or her official capacity is not a suit against the official

but rather is a suit against the official's office.  As such, it is no different from a suit against the

State itself." *Will*, 491 U.S. at 71.  The Eleventh Amendment bars suits for money damages against

the State, arms of the State, and state officials acting in their official capacities. *Rodgers v. Banks*,

344 F.3d 587, 594 (6th Cir. 2003).  Retroactive equitable relief against state officials—often

involving compensatory payments from the state treasury—is also precluded by the Eleventh

Amendment because it is effectively a suit against the state itself. *Doe v. Cummins,* 662 F. App'x

437, 444 (6th Cir. 2016).

"Although federal-court claims for retroactive relief against a state, an arm of the state, or a state official acting in her or his official capacity are barred by the Eleventh Amendment, 'a federal court may enjoin a 'state official' from violating federal law' prospectively." *Qiu v. Univ. of Cincinnati*, 803 F. App'x 831, 838 (6th Cir. 2020). And, a suit for declaratory relief against state officials acting in their official capacities is also permitted in limited circumstances. *Cummins,* 662 F. App'x at 444. "The Eleventh Amendment does not bar relief that is prospective in nature and designed to ensure future compliance with federal law." *Id.*

Here, Plaintiff clearly set forth in his Amended Complaint that he is suing the individual Defendants in not only their official capacities but also their individual capacities (Am. Compl. ¶¶ 14, 16-18), and Plaintiff also clearly set forth in his prayer for relief not only his request for money damages but also his requests for multiple forms of declaratory and prospective equitable relief (ECF No. 41 at PageID.489-490). Therefore, the Court will dismiss only Plaintiff's § 1983 claims for money damages against Defendants Abdnour, Simon, Engler, Durojaiye, Schafer and Maybank in their official capacities.

(2) Failure to State a Claim

The MSU Defendants argue that Counts I and III are "utterly deficient" inasmuch as neither count alleges how Defendants Simon, Engler, Durojaiye, Schafer and Maybank individually violated Plaintiff's constitutional rights, as is necessary to state a claim (ECF No. 51 at PageID.626-628). Moreover, Defendants point out that because respondeat superior liability does not apply to § 1983 claims, *Iqbal*, 556 U.S. at 676, and Plaintiff has not made a failure to train or

failure to supervise claim, these individual Defendants cannot be held liable merely because of their leadership positions (*id.*).[2]

Plaintiff responds that he sufficiently alleged the involvement of the individual Defendants where Durojaiye was directly in charge of implementing MSU's Title IX policies, including the unconstitutional single-investigator model utilized in Plaintiff's case; Maybank denied Plaintiff's appeal; and Shafer was responsible for submitting Plaintiff's case to a sanctioning panel (ECF No. 52 at PageID.663).

Defendants' argument lacks merit.

A plaintiff alleging a § 1983 claim "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Supervising officials cannot be held vicariously liable through a respondeat superior theory. *Id.* "Because vicarious liability is inapplicable to § 1983 claims, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Shively v. Green Local Sch. Dist. Bd. of Educ.*, 579 F. App'x 348, 352-53 (6th Cir. 2014). The Sixth Circuit has consistently held that "damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (citation omitted) (emphasis in original).

In his Amended Complaint, Plaintiff identifies Simon as President of MSU during the investigation and sanctioning phase of Plaintiff's conduct process and Engler as MSU's "Interim President" (Am. Compl. ¶¶ 14-15). Plaintiff characterizes them as "the Board's administrative

---

[2] Plaintiff's Amended Complaint is replete with references to Defendant Abdnour and her allegedly gender-biased investigation of Roe's complaint, and Defendant Abdnour does not advance the argument that Counts I and III against her should be dismissed for lack of specificity.

hands during the period in question" and the people "responsible for ensuring that all Michigan State employees are properly trained and supervised to perform their jobs" (*id.* ¶ 16). Plaintiff identifies Durojaiye as Director of OIE and Deputy Title IX Coordinator, indicating that Durojaiye was "responsible for ensuring that the University complied with all applicable antidiscrimination laws" (*id.* ¶¶ 17 & 52). Against Shafer, Plaintiff identifies his position as MSU's Associate Director of Student Conduct and Conflict Resolution (*id.* ¶ 18). Plaintiff alleges that his acceptance to a different undergraduate institution was "rescinded" after the potential school's telephone call with Defendant Shafer regarding the disciplinary proceedings against Plaintiff (*id.* ¶ 259). Plaintiff identifies Maybank as Vice President of Student Affairs and Services and the person who received and erroneously denied his appeal (*id.* ¶¶ 19 & 245).

Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The Court determines that reading Plaintiff's Amended Complaint as a whole and drawing all reasonable inferences in his favor, the alleged integral involvement of the individual Defendants in the decision-making process in this case is sufficient at this stage to make out a plausible claim against each of them. *See Heyne*, 655 F.3d at 569 ("Although the Amended Complaint is devoid of specific allegations of [the defendants'] personal bias against Heyne, their alleged integral involvement in the decision-making process is sufficient at this stage to make out a colorable claim against them."). *See, e.g., Doe v. Baum*, No. 16-13174, 2019 WL 4809438, at *5 (E.D. Mich. Sept. 30, 2019) ("The allegation that Harper had the final sign-off on the improperly imposed discipline certainly suffices to establish her personal involvement."). The Amended Complaint permits the conclusion, "beyond a wing and a prayer," *Baum,* 903 F.3d at 581, that their acts or omissions violated his asserted constitutional rights. The MSU Defendants'

argument does not entitle Defendants Simon, Engler, Durojaiye, Schafer and Maybank to dismissal on this basis.

(3) Qualified Immunity

The MSU Defendants argue that Defendants Simon, Engler, Durojaiye, Schafer and Maybank are entitled to qualified immunity on both asserted constitutional violations because (1) as to his Equal Protection claim, Plaintiff failed to plead an example of a female student who was accused by another student of sexual misconduct under the same facts, yet was either found not responsible or was not dismissed from MSU; and (2) as to his Due Process claim, it was not clearly established that Plaintiff had a right to live, direct cross-examination of Roe where the Supreme Court had only held that students in disciplinary proceedings have a right to "some kind of notice" and "some kind of hearing" (ECF No. 51 at PageID.629-632).

Defendant Abdnour likewise argues that (1) Plaintiff fails to state a claim for an Equal Protection violation because Plaintiff does not plead "an example of a female student who was accused by another student of sexual misconduct under the same facts, yet was either found not responsible or was not dismissed from" MSU, and certainly no such example involving Abdnour specifically; and (2) Abdnour is entitled to qualified immunity for her conduct of the investigation under MSU's policy where the due process rights asserted by Plaintiff and allegedly violated by Abdnour were not clearly established (ECF No. 54 at PageID.722-726).

Plaintiff responds that Defendants' qualified immunity defense is (1) premature, where no discovery has been conducted; and (2) fails as a matter of law, where the right to a live hearing and cross-examination was expressly, explicitly, and clearly established at the time of the events underlying the Amended Complaint (ECF No. 52 at PageID.659-661; ECF No. 55 at PageID.741-746).

In reply, the MSU Defendants point out that Plaintiff did not specifically address the MSU

Defendants' argument that his § 1983 equal protection claim should be dismissed (ECF No. 53 at PageID.684).

Defendants' arguments entitle Defendants Simon, Engler, Durojaiye, Schafer, Maybank and Abdnour to dismissal of Count III (Equal Protection) but not Count I (Due Process).

The Sixth Circuit recently reiterated that "despite the general preference to save qualified immunity for summary judgment, sometimes it's best resolved in a motion to dismiss," which "happens when the complaint establishes the defense." *Siefert v. Hamilton Cty.*, 951 F.3d 753, 762 (6th Cir. 2020). At the pleading stage, the ultimate test is whether, reading the Amended Complaint in the light most favorable to Plaintiff, it is plausible that the individual Defendants' acts or omissions violated his clearly established constitutional rights. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Osberry v. Slusher*, 750 F. App'x 385, 392 (6th Cir. 2018); *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). This is a "two-tiered inquiry" that requires the court to (1) "determine if the facts alleged make out a violation of a constitutional right" and (2) "ask if the right at issue was 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Osberry, supra* (quoting *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013)). The court can address these questions in either order but must answer both questions in the affirmative for a plaintiff's complaint to survive. *Id.*

As Defendants observe, Plaintiff's response brief focuses on his procedural due process claim in Count I to the exclusion of his equal protection claim alleged in Count III. Other than one sentence—a conclusory assertion that he had adequately pleaded this claim (ECF No. 65 at PageID.630-631)—Plaintiff does not substantively dispute the MSU Defendants' equal protection argument. The claim in Count III is therefore waived. *See, e.g., Notredan, LLC v. Old Republic Exch. Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. 2013) (explaining that failure to respond or

otherwise substantively oppose an argument for dismissal operates as both a waiver of opposition to, and an independent basis for granting, the unopposed motion).

This Court's analysis therefore likewise focuses on Count I.  To state a procedural due process claim, a plaintiff must establish "(1) that [he has] a property interest protected by the Due Process Clause; (2) that [he was] deprived of this property interest; and (3) that the state did not afford [him] adequate pre-deprivation procedural rights."  *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 900 (6th Cir. 2019).  First, "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Doe v. Miami Univ.,* 882 F.3d 579, 599 (6th Cir. 2018) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)).  Procedural due process is "implicated by higher education disciplinary decisions."  *Id.* (citation omitted).  Second, "[s]uspension 'clearly implicates' a protected property interest, and allegations of sexual assault may 'impugn [a student's] reputation and integrity, thus implicating a protected liberty interest.'"  *Id.*

As in *Doe v. Miami University,* the pivotal element here is the last one, what process was due.  As Defendants point out, Plaintiff indicates in his Amended Complaint that he was permitted the "opportunity to be heard" by providing a statement, submitting evidence, and identifying potential witnesses during the investigative interview (Am. Compl. ¶ 62, 197-200, 211).  Indeed, Plaintiff admits that under MSU's RVSM Policy at the time, both parties were permitted to submit questions to OIE that they would like to be asked of the other party (*id.* ¶ 66).  Plaintiff also admits that he was permitted to, and did, comment on Abdnour's draft report (*id.* ¶¶ 154 & 222), submit a sanction mitigation request to the review panel (*id.* ¶ 233), and appeal both the finding of responsibility and sanction (*id.* at ¶¶ 239-244).  Hence, consistent with how Plaintiff has framed the proposed class in this case ("All MSU students and/or former students … subjected to a

disciplinary sanction ... without first being afforded a live hearing and opportunity for cross[-]examination of witnesses"), Plaintiff's procedural due process claim is specifically based on his claimed right to "a live hearing and cross-examination."

The question then is whether such a right was clearly established at the time of the events underlying the Amended Complaint. A right is clearly established "only if the contours of the right violated are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *United States v. Lanier*, 520 U.S. 259, 270 (1997). Clearly established law for qualified immunity purposes requires "binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point." *Kennedy v. City of Villa Hills*, 635 F.3d 210, 214-15 (6th Cir. 2011).

Plaintiff argues that "the Sixth Circuit has specifically held that the Due Process requirements of a live hearing and cross-examination were clearly established as of 2017 by *Univ. of Cincinnati*, which was decided before Plaintiff's Title IX proceedings at MSU" (ECF No. 52 at PageID.661; ECF No. 55 at PageID.743). The Court agrees.

In 2005, in *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 641 (6th Cir. 2005), the Sixth Circuit "suggested that cross-examination may be required in school disciplinary proceedings where the case hinged on a question of credibility." *Baum*, 903 F.3d at 578. *See Flaim*, 418 F.3d at 641 (suggesting that if a "case … resolve[s] itself into a problem of credibility, cross-examination of witnesses might have been essential to a fair hearing") (quoting *Winnick v. Manning*, 460 F.2d 545, 550 (2d Cir. 1972)).

Next, in *Doe v. University of Cincinnati*, 872 F.3d 393, 401-02 (6th Cir. 2017), which was decided on September 25, 2017, i.e., before the disciplinary proceedings in this case were initiated in February 2018, the Sixth Circuit "encountered the credibility contest that we contemplated in *Flaim* and confirmed that when credibility is at issue, the Due Process Clause mandates that a

13

university provide accused students a hearing with the opportunity to conduct cross-examination."
*Baum*, 903 F.3d at 578. Specifically, the Sixth Circuit held that "cross-examination is 'essential
to due process' only where the finder of fact must choose 'between believing an accuser and an
accused.'" *Univ. of Cincinnati*, 872 F.3d at 405 (quoting *Flaim*, 418 F.3d at 641). *See also Baum*,
903 F.3d at 578 (referencing its decision in *University of Cincinnati* and indicating that it was
"reiterat[ing] that holding once again: if a public university has to choose between competing
narratives to resolve a case, the university must give the accused student or his agent an opportunity
to cross-examine the accuser and adverse witnesses in the presence of a neutral fact-finder").

The MSU Defendants claim that the district court in *Doe v. Northern Michigan University*,
393 F. Supp. 3d 683 (W.D. Mich. 2019), reached a contrary conclusion (ECF No. 51 at
PageID.630-631; ECF No. 53 at PageID.685). However, as Plaintiff points out, the district court
there likewise expressly recognized that "the law in place at the time Defendants investigated and
disciplined Plaintiff's actions was that cross-examination was needed only 'where the finder of
fact must choose 'between believing an accuser and an accused,' but the 'panel need not make this
choice if the accused student admits the 'critical fact[s]' against him.'" *N. Michigan*, 393 F. Supp.
3d at 697 (quoting *Univ. of Cincinnati*, 872 F.3d at 405 (quoting *Flaim*, 418 F.3d at 641)). The
district court found that the right was not applicable on the facts before it, where the plaintiff, "at
least initially, did not deny the charges when presented with the allegations." *Id.* Plaintiff
emphasizes that unlike the plaintiff in *Northern Michigan,* he has "consistently refuted his
accuser's account" (ECF No. 52 at PageID.662).[3]

---

[3] In his Notice of Supplemental Authority (ECF No. 57), Plaintiff also points this Court to the
March 23, 2020 decision in *Doe v. Univ. of Michigan*, No. 18-11776, 2020 WL 1433848, at \*7
(E.D. Mich. Mar. 23, 2020), where that district court also concluded that the right to a hearing with
cross-examination when credibility is at stake was clearly established by *Doe v. University of
Cincinnati* on September 25, 2017. The MSU Defendant filed a response to Plaintiff's Notice of

In short, at this pleading stage, taking the facts as true and reading all inferences in Plaintiff's favor, Plaintiff has plausibly demonstrated a violation of a clearly established right. Therefore, Defendants Simon, Engler, Durojaiye, Schafer, Maybank and Abdnour are not entitled to qualified immunity on Plaintiff's procedural due process claim in Count I.

**3.**   **Title IX Claim** **(Count II)**

Title IX, which prohibits discrimination on the basis of sex at schools receiving federal funding, 20 U.S.C. § 1681(a), "bars the imposition of university discipline where gender is a motivating factor." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994). "Title IX is enforceable through a judicially implied private right of action, through which monetary damages are available." *Miami Univ.*, 882 F.3d at 589 (citation omitted). A student "attacking a university disciplinary proceeding on grounds of gender bias" can plead different "theories of liability," including "erroneous outcome" and "selective enforcement." *Id.* (citation omitted). Plaintiff references both theories in his Count II.

**a.  Erroneous Outcome**

The MSU Defendants argue, as a threshold matter, that Plaintiff's allegations about supposed "pressure" MSU was facing from the federal government do not demonstrate erroneous outcome where most of the events Plaintiff references happened years before Plaintiff's case was adjudicated by MSU (ECF No. 51 at PageID.621-622). Further, the MSU Defendants opine that the supposed "pressure" is of little moment (*id.* at PageID.622, citing *Doe v. Univ. of Dayton*, 766 F. App'x 275, 282 (6th Cir. 2019) (rejecting petitioner's argument that university was pressured by the Department of Education's Office for Civil Rights (OCR) to conduct investigations in gender-biased manner, and refusing to credit "events that [were] temporally removed from

---

Supplemental Authority (ECF No. 58), and Plaintiff has moved for this Court to strike the MSU Defendants' response (ECF No. 59), a request that the Court, in its discretion, will simply deny.

[petitioner's] hearing and raise[d] little or no inference of discrimination"); *Baum*, 903 F.3d at 586 ("external pressure alone is not enough to state a claim that the university acted with bias in this particular case")).  Last, the MSU Defendants argue that Plaintiff fails to allege any statements by anyone in the process, or other factors from *this* case, that would suggest gender bias (*id.* at PageID.623) (emphasis in original).

In response, Plaintiff argues that in alleging that the university did not provide an opportunity for cross-examination even though credibility was at stake in his case, he has pled facts sufficient to cast "some articulable doubt" on the accuracy of the disciplinary proceeding's outcome, satisfying the first prong of a Title IX erroneous-outcome claim (ECF No. 52 at PageID.653).  Plaintiff argues that he has also sufficiently pleaded gender bias where his Amended Complaint referenced other contemporaneous OCR investigations and the Larry Nassar scandal, as well as the instances of gender bias during his proceeding, including that investigators overlooked blatant credibility issues with Roe's claims and uniformly granted more credibility and weight to the witnesses supporting the female student (*id.* at PageID.653-654).  Plaintiff also points to alleged evidence of gender bias during his proceeding, such as the investigator overlooking Roe's "blatant credibility issues," failing to timely seek out exculpatory evidence, and redacting existing exculpatory evidence from her report (*id.* at PageID.654-655).

In reply, the MSU Defendants assert that Plaintiff's litany of procedural and investigatory errors are "nothing more than an attempt to bootstrap the fact that he was found responsible into evidence of gender bias" (ECF No. 53 at PageID.681).  According to the MSU Defendants, Plaintiff, at most, has alleged that MSU favored alleged sexual assault victims over alleged perpetrators of sexual assault, but "without a showing that MSU was biased against men" (*id.*).

The MSU Defendants' argument has merit.

A university violates Title IX if it "reaches an erroneous outcome in a student's disciplinary

proceeding because of the student's sex." *Baum*, 903 F.3d at 585. The parties agree that to state

a Title IX claim under the erroneous outcome theory, a plaintiff must plead facts sufficient to "(1)

'cast some articulable doubt' on the accuracy of the disciplinary proceeding's outcome, and (2)

demonstrate a 'particularized . . . causal connection between the flawed outcome and gender bias.'"

*Id.* (alteration in original) (quoting *Miami Univ.*, 882 F.3d at 592). To demonstrate a causal

connection between an allegedly flawed outcome and gender bias, a plaintiff may allege, for

example, "statements by members of the disciplinary tribunal, statements by pertinent university

officials, or patterns of decision-making that also tend to show the influence of gender." *Miami

Univ.*, 882 F.3d at 593.

Here, as evidence that the DOJ and OCR have created a significant amount of "pressure"

on MSU to "treat all those accused of sexual misconduct with a presumption of guilt" (Am. Compl.

¶ 43), Plaintiff relies on—

- An April 4, 2011 "Dear Colleague" letter encouraging schools to focus on victim advocacy (*id.* ¶¶ 24-31);

- Statements made by former government officials like former Department of Education Assistant Secretary for Civil Rights Catherine J. Lhamon who said during a Senate hearing that "some schools are still failing their students by responding inadequately to sexual assaults on campus" (*id.* ¶¶ 32-36);

- A 2015 resolution agreement between MSU and the OCR (*id.* ¶¶ 38-39); and

- Two OCR investigations of MSU, one commenced in July 2017 and the other in February 2018 (*id.* ¶ 40).

However, as another district court observed, "[d]emonstrating that a university official is

biased in favor of the alleged victims of sexual assault claims, and against the alleged perpetrators,

is not the equivalent of demonstrating bias against male students." *Sahm v. Miami Univ.*, 110 F.

Supp. 3d 774, 778 (S.D. Ohio 2015) (quoted by the Sixth Circuit in *Cummins*, 662 F. App'x at

453); *see also N. Mich. Univ.*, 393 F. Supp. 3d at 699-700 ("The flaw in Plaintiff's argument is that all of his specific factual allegations point to a bias in favor of a complainant over a respondent, rather than a bias in favor of females over males.").

Moreover, unlike in *Baum*, 903 F.3d at 586, where the plaintiff combined the "backdrop" of "external pressure" with "other circumstantial evidence of bias in [the plaintiff's] specific proceeding," Plaintiff here does not allege any specific statements by anyone in the process, or other specific factors from this case that would suggest the university's gender bias. While Plaintiff's Amended Complaint claims that Defendant Abdnour has a background in advocacy for "victims" (Am. Compl. ¶ 186), Plaintiff does not allege that she made any comments, or took any specific actions, suggesting her actions in investigating Roe's complaint were because Plaintiff is a man. Instead, Plaintiff makes merely conclusory statements of gender bias, such as "Defendant Abdnour's findings demonstrate that Doe lost the credibility contest due to gender bias" (Am. Compl. ¶ 213; *see also* ¶¶ 5, 19-20, 202, 205). As in *Cummins*, 662 F. App'x at 452, however, these statements are "unsupported by sufficient factual allegations to make their claims plausible." The Court concludes that without more specific allegations, Plaintiff has not plausibly pleaded a "particularized . . . causal connection" between the alleged flawed outcome and gender bias in this case. Therefore, his Title IX erroneous-outcome claim against MSU fails.

### b. Selective Enforcement

The MSU Defendants argue that where Plaintiff did not allege that Roe had sexually assaulted him until it became convenient to do so in this litigation, MSU was not required to initiate any investigation, and certainly did not violate Title IX by not doing so (ECF No. 51 at PageID.623).

In response, Plaintiff argues that where MSU failed to investigate Roe for possible assault, "despite the fact that the *very same reasoning* MSU applied in finding Plaintiff responsible also

applied to Roe (specifically, that Plaintiff had consumed excessive alcohol and Roe had seen him vomit multiple times during the encounter)," the facts alleged state a valid Title IX selective-enforcement claim, and he was not required to have pursued a formal complaint against Roe with MSU to state such a claim (ECF No. 52 at PageID.657-658) (emphasis in original).

Defendants' argument has merit.

To prevail on a selective enforcement claim, a plaintiff must show that "a similarly situated member of the opposite sex was treated more favorably" than he was "due to his . . . gender." *Cummins*, 662 F. App'x at 452. More specifically, a plaintiff must "identif[y] a comparator of the opposite sex who was treated more favorably by the educational institution when facing similar disciplinary charges." *Id.* (citing *Yusuf*, 35 F.3d at 716).

Here, Plaintiff alleges that MSU "failed to investigate whether Roe had committed a sexual assault against [him], in that [he] lacked the capacity to give consent" (Am. Compl. ¶ 374(c)). Plaintiff's allegation does not "demonstrate that a female in circumstances sufficiently similar to his own . . . was treated more favorably by the University." *Mallory v. Ohio Univ.*, 76 F. App'x 634, 641 (6th Cir. 2003). The Court agrees with the MSU Defendants that Plaintiff and Roe are not similarly situated where Roe filed a complaint accusing Plaintiff of misconduct, and Plaintiff never claimed sexual assault or requested action, instead waiting to claim he was assaulted when it was time to file a lawsuit. *See, e.g., Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646, 678 (M.D. Tenn. 2018) ("[I]f the accused student did not similarly initiate or attempt to initiate a complaint against his or her accuser, the two cannot be compared") (quoting *Rossley v. Drake Univ.*, 342 F. Supp. 3d 904, 933 (S.D. Iowa 2018), and collecting other district court cases for the same proposition).

Relying on *Miami University*, 882 F.3d at 591, Plaintiff argues that "this same reasoning has been rejected by the Sixth Circuit" (ECF No. 52 at PageID.658). However, the plaintiff in

19

*Miami University* forfeited his Title IX selective-enforcement claim, *id.* at 595, and the Sixth

Circuit never addressed the showing required for such a claim.  The reasoning upon which Plaintiff

relies is merely the Sixth Circuit's observation that *for purposes of a deliberate indifference claim,*

*a school may have actual knowledge of harassment even if a "formal complaint" is not filed.  Id.*

at 591.  The Sixth Circuit in *Miami University* did not address, let alone reject, its prior holding

that to state a Title IX selective-enforcement claim, a plaintiff must "identif[y] a comparator of the

opposite sex who was treated more favorably by the educational institution *when facing similar*

*disciplinary charges*."  *See Cummins*, 662 F. App'x at 452 (emphasis added).

In short, Plaintiff has not alleged that he was unfairly investigated or disciplined where

another similarly-situated female facing disciplinary charges was not.  As a result, the Court holds

that Plaintiff has failed to state a plausible Title IX selective-enforcement claim against MSU.

Accordingly, dismissal of Count II, in its entirety, is warranted.

### B.    Motion to Strike Class Allegations

### 1.    <u>Motion Standard</u>

"A court may strike class-action allegations before a motion for class certification if the

complaint demonstrates that the requirements for maintaining a class action cannot be met and

discovery or factual development would not 'alter the central defect in th[e] class claim.'"  *Oom*

*v. Michaels Companies Inc.*, No. 1:16-cv-257, 2017 WL 3048540, at *2-3 (W.D. Mich. July 19,

2017) (quoting *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (noting

"[t]hat the motion to strike came before the plaintiffs had filed a motion to certify the class does

not by itself make the court's decision reversibly premature" and affirming the district court's

grant because it "cannot see how discovery or for that matter more time would have helped [the

plaintiffs]")).

When a defendant moves "to strike class action allegations on the basis that class certification is precluded as a matter of law, the defendant bears the burden of establishing that the plaintiff will be unable to demonstrate facts supporting certification, even after discovery and the creation of a full factual record." *Oom, supra* (citation omitted). "If a defendant can clearly show that a class definition is legally impermissible, fairness and efficiency require that the Court address the issue in response to a properly filed motion." *Id.* (citation omitted).

"'When the defendant challenges class certification based solely on the allegations in the complaint, the standard is the same as applied in deciding a motion to dismiss under Rule 12(b)(6).'" *Oom, supra* (citation omitted). As such, the complaint must contain "[f]actual allegations ... enough to raise a right to [class certification] above the speculative level ... on the assumption that all the allegations in the complaint are true[.]" *Id.* (quoting *Twombly*, 550 U.S. at 555).

The Federal Rules of Civil Procedure mandate a two-step process to determine whether an action may be maintained as a class action. First, the court must determine whether the proposed class meets the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy. FED. R. CIV. P. 23. Second, if the four prerequisites are satisfied, then the court must determine whether the proposed class falls within one of the categories of Rule 23(b). FED. R. CIV. P. 23(b). A district court has "broad discretion in deciding whether to certify a class," *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996), but the court "may not certify any class without 'rigorous analysis' of the requirements of Rule 23." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc) (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)). "Given the huge amount of judicial resources expended by class actions, particular care in their issuance is required." *Pipefitters Local 636 v. Blue Cross Blue Shield of Michigan*, 654

F.3d 618, 630 (6th Cir. 2011).  And failure to satisfy the requirements of Rule 23(a) or (b) "dooms the class."  *Pilgrim*, 660 F.3d at 946.

## 2.   <u>Class Allegations</u>

The MSU Defendants argue that the proposed class first fails because granting the putative class injunctive relief would require analysis of the facts of each class member's disciplinary matter (ECF No. 51 at PageID.633-634).  Specifically, the MSU Defendants emphasize that the proposed class claims would require delving into the specific facts of every class member's individual disciplinary action, in order to determine whether credibility was an issue and whether a live hearing and cross-examination were required (*id.* at PageID.635-637).  The MSU Defendants also point out that no class member can show entitlement to an injunction without proving prejudice, which is an individualized issue (*id.* at PageID.637).

Defendant Abdnour argues that the arguments made by the MSU Defendants apply with equal force to the class treatment of the claims as they are stated against her (ECF No. 54 at PageID.726).

Plaintiff responds that Defendants' motion to strike the class allegations is (1) premature; (2) rests on factual speculation wholly inappropriate in a Rule 12(b)(6) motion; and (3) even accepting its factual conjectures, fails as a matter of law where the class members share "common contentions" about their "unconstitutional findings of guilt" (ECF No. 52 at PageID.665-674; ECF No. 55 at PageID.746).

Defendants' argument has merit.

Again, Plaintiff broadly defines the class as

All MSU students and/or former students, including prospective and future students, subjected to a disciplinary sanction, suspension, or expulsion pursuant to a finding of responsibility under the RVSM Policy (or its predecessor and/or successor policy/policies) without first being afforded a live hearing and opportunity for cross[-]examination of witnesses.

(Am. Compl. ¶ 275).  Plaintiff seeks certification under Rule 23(b)(2), which permits certification

if "the party opposing the class has acted or refused to act on grounds that apply generally to the

class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the

class as a whole."  FED. R. CIV. P. 23(b)(2).  Plaintiff opines that the proposed class is "united by

the following common contentions":

> that MSU's hearing-less, cross-examination-less Title IX procedure was
> unconstitutional; that they had and have a constitutional right to the determination
> of guilt or innocence through procedures affording them Due Process; and that
> students living under the cloud of an unconstitutional sexual assault finding are
> entitled to have that wrongful finding vacated from their records

(ECF No. 52 at PageID.670).

As Defendants point out, it is not enough that there are some common issues shared

between a plaintiff and the putative class.  The Supreme Court has observed that "[w]hat matters

to class certification ... is not the raising of common 'questions'—even in droves—but rather, the

capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the

litigation."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted).  Class

certification under 23(b)(2) is proper only if resolution of a common question will "resolve an

issue that is central to the validity of each one of the claims in one stroke."  *Id.* (reversing

certification of a Rule 23(b)(2) class that sought injunctive and declaratory relief, punitive

damages, and back-pay, where the plaintiffs had failed to show commonality).  "[A] class member

who proves his own claim [must] necessarily prove the claims of other class members." *Romberio*

*v. UNUM Provident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009).

"The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy

warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as

to all of the class members or as to none of them.'"  *Wal-Mart Stores*, 564 U.S. at 360 (citation

omitted).  In other words, "Rule 23(b)(2) applies only when a single injunction or declaratory

judgment would provide relief to each member of the class.  It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Id.*

Plaintiff's proposed class members do not necessarily share a common question, the resolution of which will "resolve an issue that is central to the validity of each one of the claims in one stroke."  Rather, as set forth above in this Court's discussion of the Sixth Circuit's decisions in *Flaim, University of Cincinnati*, and *Baum*, the procedural due process right at issue is not universally available but squarely depends on whether "the finder of fact must choose 'between believing an accuser and an accused." *See Univ. of Cincinnati*, 872 F.3d at 405.  The determination requires an individualized inquiry that cannot be accomplished on a class-wide basis.

Moreover, as Defendants emphasize and Rule 23(b)(2) requires, the injunctive or declaratory relief must be final to "the class as a whole," a prospect that is at odds with the fact-intensive character of sexual assault claims.  Indeed, as the MSU Defendants point out (ECF No. 51 at PageID.637), individualized issues "abound" with this proposed class, which is limitless as to time and scope.  And "[d]issimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart Stores*, 564 U.S. at 350 (citation omitted).

In short, the Court is convinced that the requirements for maintaining the proposed class action cannot be met and that neither discovery nor factual development would alter the lack of commonality, which is the central defect.  Therefore, the class claim allegations are properly stricken at this stage in the litigation.

### III.  CONCLUSION

Accordingly, for the foregoing reasons:

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Strike (ECF No. 59) is DENIED.

**IT IS FURTHER ORDERED** that Defendants' Motions to Dismiss (ECF Nos. 51 & 54) are GRANTED IN PART and DENIED IN PART.  Specifically, the Court dismisses Plaintiff's claims against MSU in Counts I, II and III; dismisses the remainder of Plaintiff's claim in Count III against Defendants Abdnour, Simon, Engler, Durojaiye, Schafer and Maybank; dismisses Plaintiff's claims for money damages against Defendants Abdnour, Simon, Engler, Durojaiye, Schafer and Maybank in their official capacities; and strikes the class allegations.  The motions are otherwise denied.

**IT IS FURTHER ORDERED** that Defendants Abdnour, Simon, Engler, Durojaiye, Schafer and Maybank shall, not later than 14 days after entry of this Order, file their Answer(s)/responsive pleading(s) to Plaintiff's Amended Complaint (ECF No. 34).

Dated:  September 1, 2020               /s/ Janet T. Neff
                                                  JANET T. NEFF
                                                  United States District Judge